UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BERNICE WARD,

                     Plaintiff,

        v.

CONCENTRIX CORPORATION,
                     Defendant.
_____

14-CV-6392

**ORDER**

## <u>INTRODUCTION</u>

Plaintiff Bernice Ward ("plaintiff"), a former employee of defendant Concentrix Corporation ("Concentrix" or "defendant"), brings this action alleging violations of the Americans with Disabilities Act of 1990 (the "ADA") and the New York State Human Rights Law ("NYSHLR"). Plaintiff specifically alleges that Concentrix discriminated against her by its refusal to provide reasonable accommodation for her disability under the ADA and terminating her employment in retaliation for her request for such accommodation.

Defendant denies plaintiff's claims, and moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment against plaintiff. Defendant contends that plaintiff was not denied reasonable accommodation for her medical condition, but was discharged because she violated established rules of attendance. Plaintiff opposes the defendant's motion. For the reasons set forth below, the Court grants defendant's motion for

summary judgment, and dismisses plaintiff's complaint with prejudice.

## FACTUAL BACKGROUND

The following facts are taken from the respective statements of fact and related exhibits submitted by the plaintiff and defendant. Plaintiff Bernice Ward was hired by Concentric as a full time "[i]nbound" customer service representative for the corporation's Pittsburgh Post-Gazette. While interviewing for the position, plaintiff was made aware of, and she consented to, a strict attendance policy within the first 90 days of her employment. The written attendance policy clearly warned plaintiff that an employee with two or more occurrences within the 90 day probationary period was subject to termination. An "occurrence" was defined as unscheduled absences of greater than two hours in duration. Plaintiff initialed and dated a copy of the written attendance policy. She also signed a written policy stating that she was required to contact her supervisor prior to the start of her shift if she was unable to report to work. During the interview process, plaintiff agreed that, if hired, she would "remain fully flexible" and able to work her scheduled hours "without restriction." Plaintiff's deposition testimony, p. 36-37. The hiring manager, Brian Baug, also advised plaintiff that being late or failing to notify her manager if she was going to be late would be grounds for termination. During her second interview,

plaintiff advised defendant that she had recently been in a motorcycle accident and that she had "a metal pelvis." Plaintiff's deposition testimony, p. 35. Plaintiff asked if she had to provide any "paperwork" to "cover" her if she had any medical appointments or was in pain. T. 35. She was told to submit paperwork from a doctor stating that she had been seen, or was being treated, for her injury. T. 35. However, a "New Employee Summary Information" form containing plaintiff's pertinent personal data listed plaintiff as having "no" "disability status." The form was digitally signed by plaintiff on September 4, 2013.

Plaintiff was employed by Concentrix from September 3, 2013 until she was terminated on October 24, 2013. On September 18, 2013, plaintiff provided her supervisor with a note from Dr. Catherine Humphrey, M.D. stating that she had treated plaintiff for a pelvic ring fracture from 2011 to 2013. Dr. Humphrey further stated that plaintiff "still had a lot of trouble sitting for more than 30 minutes straight" and requested a chair that would "afford [plaintiff] greater comfort while sitting." On September 19, 2013, Mr. Baug sent a written request to Megan Ladd, manager of human resources operations, that an ergonomic chair be provided to plaintiff. He noted that plaintiff had already tested such a chair and indicated that it helped her.

With respect to plaintiff's attendance during her employment with Concentrix, she was late for her shifts on October 4, 11, 14

and 16 and left more than six hours early on October 9 and 11, 2013. On the two occasions that plaintiff left early, her stated reasons were a family emergency and a dispute with her neighbors, respectively. On October 16, 2013, Ms. Ladd issued plaintiff a "Final Written Warning," which stated that plaintiff had "left more than 2 hours early on 10/11/13, which counts as an absence," which put her "on a final warning, with any further missed days possibly leading to termination." On October 22, 2013, plaintiff was more than two hours late for work and failed to notify her supervisor prior to the start of her shift in accordance with the attendance policy. Plaintiff later advised Concentrix that she was late due to her medical condition. The next day, October 23, 2013, plaintiff sent an email to Mr. Baug stating that she had a medical appointment that day at 11:00 a.m. to "follow up on [her] medical condition." Mr. Baug responded with the following:

> "I have received this. My concern is that leaving early by more than two hours would count as an absence. What we have done in the past to get around this is allow the agent to take an extended lunch and come back after their appointment. Is there any way you would be able to do that? And if so, do you know how long your appointment would take? Thanks!"

Plaintiff replied by stating that she would "try [her] best to make it back." She also stated that she was "not sure" how long the appointment would take. Mr. Baug responded:

> "I just want to remind you that if you do not return to work today that will mean you left with more than two hours left in your shift, which counts as an absence, and a second absence in the first 90 days can result in

termination.  The attendance policy is attached if you need to review it."

When plaintiff requested clarification concerning her possible termination, Mr. Baug responded: "We had no warning on this doctor's appointment, but I did offer you the same exception I have offered to other members of the team, which is for you to come back after you[r] appointment and we would just consider the time spent at the doctor[] as an extended lunch."

Plaintiff contends that because she did not return to work following her medical appointment on October 23, 2010, she was terminated by defendant the following day, October 24, 2013. Plaintiff testified at her deposition that although her 11:00 A.M. appointment ended "[s]ometime around" 1:00 p.m., she did not return to work because she was attempting to schedule follow-up physical therapy appointments, which took her 30 to 45 minutes, and then she "went home to lay down." Plaintiff's deposition testimony, p. 72-74.

Following her termination, plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on November 22, 2013. On April 17, 2014, the EEOC issued a right-to-sue letter to plaintiff, stating that it was unlikely that the EEOC would be able to complete its administrative processing of the charge within 180 days and processing of the charge was being terminated.  Thereafter, plaintiff filed the instant action.

**DISCUSSION**

## I.   Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. *See Tolan v. Cotton, 134* S. Ct. 1861, 1863 (2014)(per curiam); *McBride v. BIC Consumer Products Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. *Scott v. Harris*, 550 U.S. 372, 380 (2007), citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). "Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *McBride*, 583 F.3d at 96. "'A plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [adverse action]; and the plaintiff must then produce evidence and carry the burden of

persuasion that the proffered reason is a pretext.'" *Id.*, quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir.2006).

## II. Plaintiff has failed to establish that she was denied a reasonable accommodation for her disability in violation of the ADA.

The ADA, *inter alia*, prohibits discrimination against qualified individuals with a disability with respect to conditions of employment including hiring, advancement, discharge and compensation. *See* 42 U.S.C.A. § 12112(a) (2009). In its motion for summary judgment, defendant contends that the complaint should be dismissed because plaintiff failed to establish (1) that she was qualified to perform the duties of her job with or without reasonable accommodation of her disability, or (2) that she was denied a reasonable accommodation from defendant. Defendant's memorandum of law, p. 13. Plaintiff responds that defendant failed to provide plaintiff with the reasonable accommodation of allowing her to be absent for the rest of the work day following a medical appointment. Plaintiff's memorandum of law, p. 1-2. Plaintiff further contends that defendant retaliated against plaintiff for requesting the accommodation by terminating her employment the following day.

To sustain a claim based on a failure to reasonably accommodate under the ADA, it must be shown that: (1) plaintiff is disabled within the meaning of the statute; (2) her employer is covered by the statute and had notice of her disability; (3) she

could perform the essential functions of her job with or without reasonable accommodation; and (4) her employer refused to provide a reasonable accommodation. With respect to the first element, although defendant disputes whether plaintiff is disabled under the meaning of the ADA in its reply memorandum of law, it is well settled that arguments raised for the first time in reply papers are improper and will not be considered by the Court. *See George v. Ramsay*, No. 05-CV-575, 2008 WL 648444, at *2 (W.D.N.Y. 2008). In any event, the record clearly establishes that plaintiff provided a treating physician's note stating that she was being treated for a pelvic ring fracture injury as a result of a motorcycle accident, and that she had a limitation for sitting more than 30 minutes, which required an accommodation. A doctor's note indicating that accommodation is requested, with a description of plaintiff's condition and functional limitations, regardless of defendant's acknowledgment of her symptoms or the need for accommodation, can be sufficient to demonstrate that plaintiff was disabled within the meaning of the ADA. *See Abdo v. Univ. of Vermont,* 263 F. Supp. 2d 772, 778 (D. Vt. 2003); *cf. Piccolo v. Wal-Mart*, No. 11-CV-406, 2012 WL 1965440, at *7 (W.D.N.Y. 2012). With respect to the second element, there is, as well, no dispute that Concentrix was covered under the ADA and had notice of plaintiff's disability.

With respect to the third element of her failure to accommodate claim, plaintiff contends that defendant failed to

provide reasonable accommodation, not by refusing her request to attend her medical appointment, but by refusing her request to take the rest of the afternoon off after her 11:00 A.M. appointment on October 23, 2013.  Defendant contends that plaintiff has failed to establish that (1) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation or that (2) Concentrix refused to provide her with a reasonable accommodation.  The Court agrees and therefore grants defendant's motion for summary judgment.

"Under the ADA, an individual is qualified for a job if he can perform its essential functions. The term essential functions, which is not defined in the ADA itself, is defined in ADA regulations promulgated by the [EEOC] generally to mean the fundamental duties of the position in question, but not functions that are merely marginal." *Colby v. Pye & Hogan LLC*, 602 F. Supp. 2d 365, 371 (D. Conn. 2009) (internal quotation marks and citations omitted).  Considerable weight must be given to employer's judgment with respect to which job functions are essential, and any written job descriptions are also afforded special weight. *See Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 119, 129 (E.D.N.Y. 2014), citing 42 U.S.C. § 12111(8).

The record here reveals that defendant emphasized to plaintiff that her attendance and punctuality are essential functions of her job.  "As a general rule, some degree of regular, predictable

attendance is fundamental to most jobs, . . . and an employee who cannot get to work does not satisfy the essential requirements of her employment." *Shepheard v. City of New York*, 577 F.Supp.2d 669, 676 (S.D.N.Y. 2008).  The record further indicates that plaintiff was expected to notify defendant of tardiness prior to the start of her shift.  Plaintiff's attendance and tardiness issues during her brief employment with defendant are well documented and undisputed in the record.  Furthermore, plaintiff has submitted no evidence that she notified defendant of her extended tardiness or absences prior to the start of her shifts.  This evidence establishes that plaintiff failed to perform an essential function of her employment by ceasing to maintain regular and predictable attendance approximately one month into her 90-day probationary period.

With respect to whether defendant refused, as plaintiff claims, to offer her reasonable accommodation, the ADA does not require that an employer grant the specific accommodation that a disabled employee desires.  "The Appendix to the ADA regulations explains that 'the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.'" *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996), quoting 29 C.F.R. pt. 1630, app. at 415.  "[I]f the employer has proposed a reasonable accommodation, the employee cannot insist on some other particular accommodation,

even if the employee's proposed accommodation is also reasonable."
*Bielski v. Green*, 674 F. Supp. 2d 414, 424 (W.D.N.Y. 2009), citing
*Hankins*, 84 F.3d at 800-801. Summary judgment for the employer is
appropriate where the evidence shows that the employer offered an
accommodation that was "plainly reasonable." *Wernick v. Federal
Reserve Bank of New York*, 91 F.3d 379, 385 (2d Cir. 1996).

In the case at bar, the Court concludes that the evidence
shows, as a matter of law, that defendant did provide plaintiff
with a reasonable accommodation, in the form of providing her with
a special ergonomic chair in response her physician's written
recommendation, in which she opined that plaintiff had trouble
sitting for longer than 30 minutes. Indeed, plaintiff makes no
claim that defendant denied reasonable accommodation of her
documented sitting limitation. The Court further concludes that
defendant provided a plainly reasonable accommodation in allowing
plaintiff an excused period of tardiness due to her pain on
October 22 and permitting her to attend a medical appointment on
October 23 if she returned to work at some point prior to the end
of her scheduled shift. The Court notes that the evidence reveals
that plaintiff did not, in fact, request an excused absence
following her appointment. She equivocally advised her supervisor
in an email as follows: "I will be able to try [to return to work].
I am not sure of how long the appointment will be . . . But I will
try my best to make it back." She did not return to work, nor has

she supplied evidence that she subsequently advised her supervisor that she would not return.  As such, plaintiff's claim that she was denied the specific accommodation that she  requested, is not supported by this record.   Following this episode, she was terminated for violating clearly established and understood company rules regarding attendance.

Based on the facts set forth above, the Court finds that plaintiff has, in any event, failed to rebut the legitimate, non-discriminatory rational proffered by Concentrix for dismissing her from her position.  It is undisputed that Concentrix issued a final warning to plaintiff after she was absent from work or late on several occasions within the first 60 days of her employment.  The record, including plaintiff's own testimony, further establishes that, in violation of her employment contract, plaintiff frequently failed to notify defendant of her absences or late arrival until after the start of her shift.  Such reasons state a valid, non-discriminatory rationale for dismissing plaintiff from her position.  Plaintiff has failed to rebut the non-discriminatory reasons stated by defendant, and she has presented little evidence from which a trier of fact could conclude that the reasons stated by Concentrix for her dismissal were pretextual.  Plaintiff alleges that despite several prior instances of attendance problems that might have served as the basis for her termination, she was not dismissed until the day after she refused to return to work after

her "medical" appointment on October 23. It is well settled, however, that while the timing of an adverse action may support an inference of discrimination for purposes of pleading a prima facie case of discrimination, such evidence, as a matter of law, does not rebut a legitimate, non-discriminatory basis for taking adverse action. *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir.2010). Accordingly, plaintiff's claim that she was terminated shortly after she refused to return to work following her "medical" appointment, without reporting her inability to do so, does not support her claim that she was denied a reasonable accommodation for her alleged disability. Plaintiff was discharged because of her unsatisfactory attendance record, not because defendant's failure, as she asserts, to make a reasonable accommodation for her claim of disability. Consequently, the Court also dismisses plaintiff's claim of retaliation.

## **CONCLUSION**

For the reasons set forth above, the Court grants defendant's motion for summary judgment (Docket No. 24), and dismisses plaintiff's complaint (Docket No. 1) in its entirety, with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

_____
     MICHAEL A. TELESCA
 United States District Judge

DATED:    Rochester, New York
          January 28, 2016